WILLIAM H. CAINE, Appellant, *v.* BENEVOLENT AND PROTECTIVE ORDER OF ELKS, Respondent.

*Association of Elks — power of its ruler to remove officers — an arbitrary removal is not justified — scope of such power.*

*Semble,* that the fact that by the constitution of a benevolent and protective order of Elks its ruler is given the power to remove, for cause, any elected or appointed officer of its grand lodge, does not justify a removal made by such ruler if the removal was made without notice to the persons removed and without giving them any opportunity of appearing before him and presenting their defense, and that a judgment pronounced by the ruler upon the conduct of the persons removed, if arbitrary and without any competent evidence that the persons removed had failed to fully and conscientiously perform the duties imposed upon them, will not be sustained.

A member of a committee appointed to designate the place at which an annual meeting is to be held, although a trustee of the order, does not come within the scope nor is he subject to the exercise of such power.

APPEAL by the plaintiff, William H. Caine, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Chautauqua on the 16th day of August, 1894, granting the defendant's motion to dissolve, set aside and vacate an injunction issued against it on the 18th day of June, 1894.

*A. C. Wade,* for the appellant.

*Leroy Andrus,* for the respondent.

LEWIS, J.:

A temporary injunction was granted in the above action by the special county judge of Cattaraugus county, restraining the defendant, its officers, agents, servants and assistants from holding or attempting to hold any annual meeting of the defendant at Atlantic City in the State of New Jersey on the 19th day of June, 1894, and from paying out or expending or contracting to pay out or expend any of the funds of the defendant in paying or defraying any expenses of such meeting.

The defendant was incorporated by special act of the Legislature of the State of New York in the year 1871, as a fraternal benevolent society, for the purpose mainly of accumulating funds for the protection and aid of its members and their families. The order was, at the time of the commencement of this action, composed of a grand lodge and a large number of subordinate lodges located in various States of the Union. The subordinate lodges receive their charters from the grand lodge, and are subject to its general control and government, subject, however, to limitations provided in the charter. The constitution provides for officers of the grand and subordinate lodges with long, high-sounding titles, which, for the sake of brevity, will be omitted. The officers consist of a ruler, who is the head of the order, three knights, a secretary, treasurer, tiler, and a board of three trustees. These officers are elected by ballot at the annual meetings of the grand lodge. Their term of office is one year. The ruler is given the power by the constitution to

appoint certain subordinate officials and such committees as may be created by law or are authorized by the grand lodge. A court of appeals, consisting of three members of the order, is provided for, to be appointed by the grand lodge at its annual meetings. This body is vested with the power to construe the laws of the order and settle all controversies, in accordance with the constitution, laws and principles of the order, and decide such questions as shall be submitted to them for their decision by the grand lodge; their decisions, when announced by the ruler, are final unless reversed by the ' grand lodge at its annual meetings. The ruler is given the power to remove, for cause, any elective or appointed officer of the grand lodge. He is required to give his reasons therefor in his annual address; such removals are subject to the approval of the grand lodge. Annual meetings of the grand lodge are to be held at such time and place as it shall determine. .

The expenses attending such meetings are to be paid by the grand lodge. Delegates to the annual meetings are appointed by the subordinate lodges and they compose the members of the convention. The expenses of the delegates in attending upon these annual meetings were found to be quite onerous, and at the annual meeting held in Detroit in the year 1893, this question was considered, and the convention concluded to change the practice which had theretofore prevailed of the convention designating by resolution the time and place for the meeting for the following year. The convention determined to appoint a committee of three with power to fix the time and place for the annual meetings, and the following resolution was unanimously adopted : " That the board of grand trustees should select a time and place that would be most convenient to the largest number of members, the place selected to be one that would offer the best inducements, and secure the lowest hotel and railroad rates." Willard C. Van Derlip, Joseph Laube and Peter J. Campbell were elected by ballot general trustees of the order at the Detroit meeting; their term of office was one year, and until their successors were appointed. These trustees, as such committee, met in the city of New York for the purpose of considering the question submitted to them. They selected Atlantic City, New Jersey, as the place of meeting, and June nineteenth as the time, and so reported to the ruler. The action of the committee did

not meet with his approval. He claimed that the committee had determined upon a place of meeting without sufficient investigation and without having made sufficient negotiations with hotel proprietors and transportation companies of different localities, with the view of securing the best terms for the delegates. He concluded to have another place selected for the meeting, and to accomplish his purpose he at once, without any notice to the members of the committee and without their having any opportunity to appear before him and give an account of their proceedings, removed them from their office as trustees. He assumed the power so to do under section 4 of the laws of the order, which reads as follows : " He (the ruler) may remove any elective or appointive officer of the grand lodge or of a subordinate lodge for cause, but he must give his reasons therefor in his annual address, and all such removals shall be subject to the approval of the grand lodge. He shall have such other powers and perform such other duties as are inherent in and pertain to his office, and are not in conflict with the constitution and laws." The ruler thereupon appointed another committee on location. The new committee selected Jamestown, N. Y., as the place of meeting, and fixed the same time for the meeting as the first committee had. The ruler thereupon called a special meeting of the order to convene at Jamestown on the day before the time thus fixed for the convention in that city. This controversy caused much feeling among the members of the order. Delegates were appointed by the different lodges; some of them were commissioned to attend the Atlantic City meeting, and others the Jamestown meeting. The ruler gave notice to the members of the committee on laws and appeals to assemble and determine as to the propriety of his action in the removal of the committee. One member of the committee thereupon resigned, another gave notice that he would not be able to attend the meeting. The ruler appointed others in their places, and the two thus appointed met with the remaining member, and without giving notice to the members of the committee who had been removed, approved the action of the ruler in removing them. As the time approached for the assembling of the delegates to these rival conventions this action was commenced in the name of the plaintiff, who was a member of the order and a resident of the State of Minnesota, and the injunction

order mentioned was obtained, and upon motion the order appealed from was granted.

Both meetings were held, a quorum of delegates being present at each meeting. The usual proceedings were had, including the election of officers, etc. The ruler attended at the Jamestown meeting, and reported what he had done in the removal of the committee, and that convention passed a resolution approving his action.

The legality of the acts of the ruler in removing the committee is the principal question presented by this appeal. If he acted within the powers conferred upon him then the Atlantic City meeting was not legally convened, and the expenses of the delegates thereto cannot properly be paid out of the funds of the order, and the officers which were there elected are not entitled to discharge their respective duties. The power to fix the time and place of the annual meetings, as stated, is vested by the constitution in the grand lodge. The convention determined to confer the power to select the place and time of meetings to a committee of three of its members for the reasons stated, instead of exercising the power by a vote of the delegates. When the committee discharged the duty thus confided to it, it was in effect the act of the convention. Had the convention at its annual meeting selected Atlantic City as its place of meeting no one would claim that the ruler had the power to change such determination. Selecting the place for such meeting was not one of the ordinary powers conferred upon the board of trustees by the constitution and laws of the order. Their duties are defined by section 11 of the grand lodge laws as follows : " The grand trustees shall have general supervision over the funds, investments and other property belonging to the grand lodge. They shall receive and hold the bonds and securities of such grand officers as are required to give security for the faithful discharge of their official duties. They shall purchase all books, papers, supplies, etc., that are necessary, and order the grand secretary to contract for all necessary printing under their direction. They shall audit the accounts of the grand secretary and grand treasurer, and report thereon in full at each annual session. For this purpose they shall obtain all necessary books, papers, etc., from those officers prior to the annual session. They shall regularly make a report of their transactions, * * * and they shall carry out in general the provisions of

the constitution and laws of the order." The fact that the committee so selected happened to hold the office of trustees does not, we think, affect the question under consideration. Had other members of the order been chosen their powers would have been the same. The power to remove such a committee as this is not, by the constitution or laws of the order, expressly or impliedly vested in the ruler, and when he assumed to exercise that power his acts were void and of no effect. But had he possessed the power of removal his decision should not be sustained because of the manner of his procedure. He assumed to remove them without notice, and without giving them any opportunity of appearing before him and presenting their defense. He pronounced judgment upon their conduct arbitrarily without, as far as appears from the record, any competent evidence that they had failed to fully and conscientiously perform the duties imposed upon them by the convention. After having assumed to remove them, he, without authority, appointed another committee upon location, thus, in effect, arrogating to himself practically the right and power of determining the place of meeting, which, by the constitution, was vested in the convention at its annual meeting. The constitution of the order provides that the grand lodge may exercise the judicial powers or delegate the same, and that a court of appeals may be established to which cases may be taken on appeal. Two members of the court of appeals having refused to act, the ruler assumed to appoint others in their places. It is quite doubtful if he possessed the power to appoint members of that committee. That power, by the constitution and laws of the order, seems to have been committed to the delegates composing the annual convention.

Other questions are presented which we do not deem it necessary to consider, as we are of the opinion, for the reasons stated, that the action of the ruler in assuming to remove the committee on location, and change the place for the meeting from Atlantic City to Jamestown, was without jurisdiction and void.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

BRADLEY, J., concurred; DWIGHT, P. J., and WARD, J., not sitting.

Order affirmed, with ten dollars costs and disbursements.